UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL D. HEACOCK,

                              Plaintiff,

        -v.-                                                       1:05-CV-766
                                                                             (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## DECISION AND ORDER

       Plaintiff commenced this action seeking judicial review of a decision by the Commissioner of Social Security denying disability insurance benefits ("DIB"). Plaintiff requests that this Court reverse the decision and remand to the Administrative Law Judge to further develop the record. The Commissioner seeks to affirm the decision. This Court has jurisdiction to review an unfavorable decision of the Commissioner under 42 U.S.C. § 405(g). For the reasons laid out below, the Court reverses and remands this case for further consideration.

I.      Background

       A.  Procedural History

       Plaintiff filed for DIB on January 9, 2003, alleging disability as of January 31, 2000 due to an eye injury, alcoholism, liver damage, traumatic brain injury, and seizures. (Tr. at 72-74).[1] This application was denied, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 61, 66, 69). A hearing was held on November 8, 2004, and on December 27, 2004, the ALJ issued a decision which found Plaintiff not disabled. (Tr. at 28-41, 414). This decision became the final decision of the Commissioner when the Appeals Council denied review on May

---

[1] "Tr." refers to the administrative transcript in this case. (Dkt. No. 5).

20, 2005.  (Tr. at 6-9).  This action followed.

B.  Arguments

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. He claims the ALJ erroneously (1) lost evidence and did not fully consider Plaintiff's application; (2) failed to properly evaluate Plaintiff's RFC; (3) erroneously evaluated vocational expert ("VE") testimony; (4) failed to properly apply the treating physician rule; (5) erroneously concluded that Plaintiff's impairments did not medically meet or equal a listed impairment; and (6) failed to follow the proper standards in determining Plaintiff's credibility.  (Pl.'s Br., Dkt. No. 8, at 16-33).  The Commissioner counters that substantial evidence supports the ALJ's decision.  (Def.'s Br., Dkt. No. 11, at 10-25).

C.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (Pl.'s Br. at 3-14; Def.'s Br. at 1-7).

II.     Analysis

A.  Standards and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g),[2] the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted).  It does not determine *de novo* whether a claimant is disabled.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted).  Although the Commissioner is ultimately responsible for

---

[2] The Section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of supplemental income claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II.  See Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence. See Pollard v. Halter, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation omitted); Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). "Failure to apply the correct legal standards is grounds for reversal." Pollard, 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. See 42 U.S.C. § 405(g); see also Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See 42 U.S.C. § 405(g); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g); Butts, 388 F.3d at 385.  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).  However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. See Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

B.  Five-Step Disability Determination

A plaintiff seeking Social Security Disability Insurance (SSDI) or SSI benefits is disabled if he can establish that he is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)[3] (emphasis added).

---

[3] In addition, a claimant's physical or mental impairment or impairments must be "of such severity that he is not only unable to do h[er] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

4

The Commissioner uses a five-step process to evaluate SSDI and SSI claims.  See 20 C.F.R. §§ 404.1520, 416.920.  Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, he is not considered disabled.  However, if he is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  See Ferraris, 728 F.2d at 584.  If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity ("RFC") precludes the performance of his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  At Step Five, the ALJ determines whether the claimant can do any other work.  20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the burden of showing that he cannot perform past relevant work.  Ferraris, 728 F.2d at 584.  However, once he has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work.  See White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990); Ferraris, 728 F.2d at 584.  In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if he can perform other work existing in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g); see New York v.

---

in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

5

Sullivan, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Plaintiff satisfied Step One because he had not worked since his alleged disability onset date of January 31, 2000. (Tr. at 32). In Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: cognitive deficit, ETOH abuse, visual field deficit, and peripheral neuropathy. (Tr. at 36). In Step Three, the ALJ determined that Plaintiff's impairments failed to meet or equal a combination of impairments listed in Appendix 1, Subpart P, Regulations No. 4 (the "Listings"). Id. In Step Four, the ALJ determined that Plaintiff retained the RFC for light work[4] with the following restrictions: limitations in near and far visual acuity, accommodation and color vision; inability to be exposed to hazards; mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and deficiencies of concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 39). Based on vocational expert testimony which he deemed consistent with the Dictionary of Occupational Titles, the ALJ determined that Plaintiff was able to return to his past relevant work as a computer programmer, and that he could also perform other work existing in significant numbers in the national economy. (Tr. at 39-40).

C. New and Material Evidence

Initially, Plaintiff argues that the Appeals Council failed to consider evidence submitted to it, and claims that this evidence, if properly considered, would have changed the outcome in this case.

---

[4] To find a residual functional capacity for light work, the Commissioner must find that a individual is able to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. Id. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. Id. If someone can do light work, they are presumed able to do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. Id.

6

(Pl.'s Br. at 16-18). The regulations provide that new and material evidence submitted to the Appeals Council must be considered when it relates to the time period before the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b), 416.1470(b), 416.1476(b); see Perez v. Chater, 77 F.3d 41 (2d Cir. 1996). If the Appeals Council decides that such evidence indicates that the ALJ's action, findings, or conclusions are contrary to the weight of the record, including the new evidence, it will review the case. 20 C.F.R. §§ 404.970(b), 416.1470(b).

In this case, Plaintiff submitted additional evidence to the Appeals Council, which was noted by the Appeals Council in its denial of review. (Tr. at 6-9). The Appeals Council determined that the additional evidence did not provide a basis for changing the ALJ's decision. Id.

The evidence submitted by Plaintiff consisted of a report from the Albany County Department of Social Services and a letter from a counselor at the Belvedere Brain Injury Program. (Tr. at 410-13). The Social Services report consisted of a check-off sheet which indicated a finding that Plaintiff was disabled. (Tr. at 410-11). The second document is a statement from Hannah McPeak, a counselor at Belvedere Brain Injury Program which stated that she "[had] worked with [Plaintiff] . . . for just over a year and [had] been providing treatment/rehabilitation services through the TBI [traumatic brain injury] Waiver within our Structured Day Program and Community Integration Counseling." (Tr. at 413).

The Court finds that the Appeals Council did not err in refusing to remand the case to the ALJ based on the new evidence provided by Plaintiff. The Social Services report contains no function-by-function assessment of Plaintiff's abilities, does not appear to have been completed by a physician, and consists of a finding of disability which is an issue properly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Plaintiff argues that Ms. McPeak's statement that Plaintiff had been participating in structured activities demonstrates that he met the "C" criteria for

Listing 12.02 of 20 C.F.R., Part 404, Subpart P, Appendix 1. This criteria can be satisfied by a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." However, Ms. McPeak is a counselor who is not an acceptable medical source under the regulations. See 20 C.F.R. §§ 404.1513. As such, her opinion was not entitled to any particular weight. Id. Considering the foregoing, the Court concludes that the Appeals Council properly considered the new evidence submitted by Plaintiff, and properly concluded that this new evidence did not warrant a review of the case.

### D. Residual Functional Capacity

Plaintiff argues that the RFC finding reached by the ALJ was the product of legal and factual error. (Pl.'s Br. at 30). Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very

heavy." SSR 96-8p, 1996 WL 374184, *1 (SSA 1996); see also Verginio v. Apfel, 1998 WL 743706, *3 (N.D.N.Y Oct. 23, 1998); LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y 1990).

The ALJ in this case made the following RFC finding:

> [Plaintiff] retains the following [RFC]: to perform light work. Additionally, he is limited in near and far acuity, accommodation and color vision. He must avoid all exposure to hazards. Based on his mental limitations, the claimant has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace and no episodes of decompensation.

(Tr. at 39). The ALJ made no specific findings as to Plaintiff's capacity to sit, stand, walk, lift, or carry. Instead, the ALJ made the conclusory finding that Plaintiff could perform light work without first providing a function-by-function assessment of Plaintiff's capacities. This failure to provide a function-by-function assessment was in contravention of SSR 96-8p as well as the applicable regulations. See 20 C.F.R. § 416.945. It is noted that regardless of whether substantial evidence supported the ALJ's determination, where "reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). Thus, this case is remanded for proper evaluation of Plaintiff's RFC.

E.  Vocational Expert Testimony

Plaintiff argues that the ALJ's reliance on the testimony of a vocational expert ("VE") was inappropriate given the ALJ's inadequate RFC finding. (Pl.'s Br. at 12-13). The ALJ is entitled to rely on vocational expert evidence in deciding whether a plaintiff retains the capacity to perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1566(e). It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing.

9

Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986); Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); Dwyer v. Apfel, 23 F. Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)); see also 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the question incorporates the full extent of a plaintiff's physical and mental limitations. Dumas, 712 F.2d at 1553-54. If the limitations set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. Id.

In this case, the Court has already found that the ALJ's RFC finding was inadequate. Because the hypothetical question posed to the VE incorporated this erroneous RFC finding, the VE's response to that hypothetical could not form a proper basis for the ALJ's decision that Plaintiff was not disabled. On remand, any hypothetical questions posed to a VE should incorporate a full and accurate RFC determination.

F. Treating Physician Rule

Plaintiff argues that the ALJ failed to properly weigh the opinion of his treating physician, Dr. Kayayan. (Pl.'s Br. at 24-30). Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998). An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. Rosa, 168 F.3d at 79. Thus, if the treating physician's opinion is not given controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical

10

evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." Snell, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. Id. Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff points to an opinion given by Dr. Kayayan which checked off boxes that Plaintiff had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to compensate," and that Plaintiff had a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement," with a notation that Plaintiff was "improving." (Tr. at 407). Dr. Kayayan noted that Plaintiff's condition could be expected to last for twelve months or more. Id. The language checked off by Dr. Kayayan tracks the language of 20 C.F.R. Part 404, Subpart 4, Appendix 1, Section 12.02(C)(2) and (3) – if given controlling weight, this opinion would indicate that Plaintiff satisfies the (C) criteria of Listing 12.02 and is thus disabled. Plaintiff also points to a February 20,

11

2004 opinion from Dr. Kayayan which stated that Plaintiff was "disabled from any employment and this is expected to be a permanent disability." (Tr. at 323).

The ALJ chose not to give controlling weight to Dr. Kayayan's February 20, 2004 opinion because it represented an opinion on disability, an issue reserved to the Commissioner. (Tr. at 38); see 20 C.F.R. § 404.1527(e)(1). This finding was proper. The ALJ also mentioned Dr. Kayayan's "(C) criteria opinion," as Plaintiff refers to it, but did not specifically cite to the sections of that opinion dealing with Plaintiff's satisfaction of the (C) criteria. Because this opinion is possibly integral to a decision whether Plaintiff satisfies the (C) criteria, which issue is more fully discussed at Subsection G below, the Court finds that the ALJ's omission in not discussing the opinion was error. Thus, on remand, the Court directs that this opinion be considered and weighed in combination with the rest of the medical evidence.

G. Listings

Plaintiff next argues that the ALJ erroneously concluded that Plaintiff's brain injury did not meet or equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.02. (Pl.'s Br. at 18-20). This Listing has three prongs: the requirements of the Listing are satisfied when the requirements of *both* subsection (A) and (B) are met, or when the requirements of Subsection (C) *alone* are met.

Subsection (A) requires a "[d]emonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following: (1) Disorientation to time and place; or (2) Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or (3) Perceptual or thinking disturbances (e.g., hallucinations, delusions); or (4) Change in personality; or (5) Disturbance in mood; or (6) Emotional lability (e.g., explosive

12

temper outbursts, sudden crying, etc.) and impairment in impulse control; or (7) Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc." Subsection (A) must be met in addition to subsection (B), which requires at least two of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, or pace; (4) Repeated episodes of decompensation, each of extended duration.

     The ALJ found that Plaintiff met the (A) criteria, but not the (B) criteria. (Tr. at 36). With regard to subsection (B), the ALJ found that Plaintiff suffered from mild restrictions in activities of daily living, social functioning, and concentration, persistence or pace, and that he had suffered from no episodes of decompensation. *Id.* This finding is supported by substantial evidence. The record reveals that Plaintiff participated in a variety of daily activities, including engaging in personal care, preparing his own meals, grocery shopping, attending AA meetings, using public transportation, driving, and attending a computer class three times per week. (Tr. at 424-29). Dr. Kayayan reported that Plaintiff was doing well living alone and managing his activities of daily living. (Tr. at 403). On November 9, 2004, Dr. Kayayan opined that Plaintiff had only mild restrictions in activities of daily living, moderate restrictions in social functioning and concentration, persistence, or pace, and that he had had no episodes of decompensation. (Tr. at 406). Thus, the record contains substantial evidence supporting the ALJ's finding that Plaintiff did not meet subsection (B) of Listing 12.02.

     Plaintiff argues that he required a structured living arrangement in order to function, which would satisfy subsection (C) of Listing 12.02 and render him disabled. (Pl.'s Br. at 18-20). Subsection (C) of Listing 12.02 requires a "[m]edically documented history of a chronic organic

13

mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." The ALJ's finding that Plaintiff suffered from the severe impairments of cognitive deficit and peripheral neuropathy, both conditions which the record shows to have lasted for at least two years, satisfies the first prong of subsection (C), leaving Plaintiff to satisfy one of the numbered criteria that follow.

Plaintiff argues that he satisfies Section 12.02(C)(3), current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. There is evidence in the record demonstrating that Plaintiff participated in a structured day program through Belvedere Brain Injury Program. As the letter from counselor Hannah McPeak attests, Plaintiff attended this program as well as community integration counseling. (Tr. at 413). The program's schedule indicates that it consisted of "13 units per week, 2 units per month for team meetings and training," for an annual amount of 126 units. (Tr. at 380). These units are not described, but the scheduling sheet shows that the structured day program consisted of the most "units" annually of any of the non-transportation programs at Belvedere. Id. A letter from Belvedere indicated that Plaintiff was receiving a "halfway house pattern of staffing to gradually reduce supervision while affording [Plaintiff] the opportunity to establish natural and community supports to maintain sobriety." (Tr. at 350). As discussed above, a statement from Dr.

14

Kayayan indicates that Plaintiff required a structured living arrangement under subsection (C). (Tr. at 407). In this report, Dr. Kayayan checked off boxes that indicated that Plaintiff satisfied Sections 12.02(C)(2) and (3), but noted that Plaintiff was "improving" and had a fair prognosis. Id. Dr. Kayayan indicated that Plaintiff's impairments could be expected to last twelve months or more. Id. As noted above, the ALJ failed to consider this opinion in analyzing the issue of whether Plaintiff met the requirements of subsection (C).

There is also evidence in the record indicating that Plaintiff may not *require* a structured setting in order to function on a day-to-day basis. Although Plaintiff participated in a day program at Belvedere five days per week, he was able to live alone, take care of his personal needs, and attend a computer class three times per week and AA meetings twice per week. (See Tr. at 418, 423-29). Plaintiff testified that Belvedere provided programs for comprehension and for dealing with his short-term memory loss. (Tr. at 430). He stated that his memory does not interfere with remembering his computer class, and that he is able to adequately keep track of his appointments by using a Palm Pilot. Id. Plaintiff also testified that about a month before the hearing he visited his cousin out of state for two days with no supervision, traveling alone by air. (Tr. at 428).

On this record, it is difficult to determine whether Plaintiff satisfied the requirement of Section 12.02(C)(3). There is persuasive evidence that he *participated* in such a program, but the evidence is not clear as to whether this program was pervasive enough to constitute a "highly structured living arrangement" as contemplated by the regulations. For example, it is not clear from the evidence whether Plaintiff received 24-hour coverage as claimed in his brief, or whether the services received consisted simply of a week day program. Additionally, it is not clear that Plaintiff required this program in order to function on a day-to-day basis, or that he would require the program to function on a sustainable basis for the foreseeable future. Because the extent and nature

of the services Plaintiff received from Belvedere are unclear from the record, the Court directs that the ALJ, on remand, collect evidence necessary to determine (1) whether this program constituted a highly structured living arrangement; and (2) whether Plaintiff's participation in this program was necessary to his overall functioning and that this need could be expected to continue.

H.  Credibility

Plaintiff argues that the ALJ failed to properly credit his subjective complaints of pain. (Pl.'s Br. at 20-24).  The court recognizes the inherent difficulty in evaluating a claimant's credibility without actual physical contact.  The ALJ is entitled to evaluate a claimant's credibility and reach an independent judgment regarding subjective symptoms in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.  See Mimms, 750 F.2d at 185.  This makes the review of an ALJ's credibility assessment particularly onerous and frequently results in significant deference to the ALJ.

The ALJ must perform a two-step analysis.  See 20 C.F.R. § 404.1529; see also Crouch v. Comm'r, Soc. Sec. Admin., No. 6:01-CV-0899 LEK/GJD, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted).  First, based upon the objective medical evidence, the ALJ must determine whether the impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529(a), 416.929(a); see Crouch, 2003 WL 22145644 at *10. "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work."  Crouch, 2003 WL 22145644 at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities, the location,

16

duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. Accordingly, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence." Paratore v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation and citation omitted); see Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

In this case, the ALJ properly followed the two-step analysis described above. (Tr. at 19). The ALJ discussed Plaintiff's testimony regarding his activities of daily living, which included living alone, managing his finances, housekeeping and shopping, and attending AA meetings and a computer course. (Tr. at 418, 423-29). Additionally, the ALJ discussed objective medical evidence which found Plaintiff able to live alone and manage his own daily activities as well as drive. (Tr. at 403). Dr. Kayayan opined that Plaintiff had only mild restrictions in activities of daily living, moderate restrictions in social functioning and concentration, persistence, or pace, and that he had had no episodes of decompensation. (Tr. at 406). The ALJ also observed that Plaintiff's own noncompliance with treatment programs, by relapse into alcoholism, had led Plaintiff to decompensate in the past. (Tr. at 38).

Based on the foregoing, the Court concludes that the ALJ was within his discretion in concluding that Plaintiff's allegations were not fully credible. The ALJ properly articulated his

rationale, which is supported by substantial evidence. See SSR 96-7p. Therefore, the ALJ properly evaluated and disregarded Plaintiff's subjective complaints.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED,** that the decision denying disability benefits is **REVERSED** and **REMANDED** for further consideration in accordance with this decision; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:    May 05, 2008
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge